UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| L. THOMAS BOLLINGER and <br> CLARE J. BOLLINGER, and <br> JEFFREY C. BOLLINGER <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendants. | NO.  CV-06-082-LRS <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction **(Ct. Rec. 3)** which was orally argued on October 19, 2006. Thomas W. Bingham and Andrew Biggs participated on behalf of the Plaintiffs and Barry F. Benson participated on behalf of the Defendant. After careful review of the pleadings submitted by all parties and with the benefit of oral argument, this Court finds that Defendant's assertion is correct that this lawsuit is barred by the discretionary function exception of the Federal Torts Claims Act.[1]

---

[1] Plaintiffs have also sued Van Aircraft (the experimental plane kit company) and Airflow Performance (maker of the purge valve) in state court.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 1

# I. BACKGROUND

Plaintiffs are suing the United States, specifically the Federal Aviation Administration (FAA) under the Federal Torts Claim Act. Complaint (Ct. Rec. 1) at ¶ 3. This litigation arises out of an accident Thomas and Clare Bollinger had in an amateur-built experimental aircraft Thomas and Jeffrey Bollinger assembled with the assistance of an Experimental Aircraft Association technical counselor. The Plaintiffs claim that the accident occurred as a "direct and proximate result of the negligent acts and omissions of the FAA inspector during the airworthiness inspection and the issuance of the special airworthiness certificate." Complaint at ¶12. Plaintiffs claim physical and mental pain, emotional distress, loss of past, present and future earnings, reduction in earning capacity, loss of enjoyment of life, property damage, and loss of consortium. Complaint at ¶13-14. Clare Bollinger sustained injuries, including brain damage from the accident. Thomas Bollinger Declaration (Ct. Rec. 22, Exhibit B) at ¶15. Defendant contends that this Court lacks jurisdiction because the government has not waived sovereign immunity under the discretionary function exception of the Federal Torts Claim Act. (Ct. Rec. 4).

The amateur-built experimental aircraft was constructed by Plaintiff Thomas Bollinger and his son Jeffrey Bollinger from an aircraft kit. Plaintiffs' Response to Motion to Dismiss (Ct. Rec. 21) at 2. Neither man was trained in mechanics. *Id.* Plaintiffs hired an Experimental Aircraft Association technical assistant, Gerald Dixon, to assist in building the plane. *Id.*

///

1       In May 2000, the Bollingers purchased an Airflow Performance,
2  Inc., fuel injection system that included a purge valve, which the
3  Bollingers placed into the aircraft. *Id* at 2. The purpose of the
4  purge valve was to assist in starting the engine at high
5  temperatures. The purge valve was inappropriate for use in the
6  aircraft or any certified aircraft because the screw holding it
7  together could not be torqued due to the use of plastic bushing
8  below the screw. Because of this, if the so-called "stop screw"
9  backed out of the purge valve, the purge valve would come apart.
10 *Id* at 3. The Bollingers claim they did not have the expertise to
11 recognize this defect. *Id*. Plaintiffs further claim that it
12 would be apparent to any FAA inspector that the purge valve was
13 not lock wired. Complaint at ¶10.
14      According to Plaintiffs, the manufacturer's manual shows that
15 the purge valve has a hole in it that indicates it should be lock
16 wired. This hole appears on the diagram to be quite small. As
17 discussed in oral argument and visible on the diagrams submitted
18 by Plaintiffs, the lock wire fits in a hole in a screw. The
19 screw is approximately 1/4 to 3/8 inches in diameter.
20      On January 29, 2002, an FAA airworthiness inspection was
21 conducted on the aircraft. Log books and photographs taken of the
22 construction process as well as manuals from the kit manufacturer
23 were included. Complaint at ¶9. According to Plaintiff Thomas
24 Bollinger, Mr. Vittetoe spent approximately 2 hours reviewing
25 documents, and physically examining the plane. Thomas Bollinger's
26 Declaration (Ct. Rec. 22, Exhibit B) at ¶ 10-11. This examination
27 included the engine and the purge valve. *Id* at ¶11. On the date
28 of the inspection, the FAA inspector made a log book entry that

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 3

the aircraft met the requirements for air worthiness and issued an air worthiness certificate.  *Id*; Complaint at ¶10.

In addition to the airworthiness certificate, owners must comply with the following requirements: the aircraft to be tested must be flown between 25-40 hours and then certified as safe by the test pilot; and (2) the aircraft must undergo an extensive inspection every 12 months.  Defendant's Motion to Dismiss.  (Ct. Rec. 4 at 7).  From the record it is clear that Thomas Bollinger conducted these inspections and certified his plane as airworthy. (Ct. Rec. 4 at footnote 5 on page 11).  This fact was also confirmed during oral argument.

On July 26, 2003, approximately 18 months after the FAA inspection, Plaintiffs Tom and Clare Bollinger took off in the experimental aircraft from the East Wenatchee Airport.  (Ct. Rec. 4 at 4).  Tom Bollinger was piloting the plane, and Clare was a passenger. Shortly after takeoff (approximately 400 feet) the aircraft lost all engine power.  Complaint at  ¶11.  A forced landing occurred in an apple orchard.  *Id*.  The cause of the accident was found to be the purge valve, which had come loose and separated resulting in loss of pressure in the fuel system, and thus, loss of all engine power.  Complaint at ¶12.

It appears that the purge valve, which vibrated loose during the accident was in place at the time of the FAA inspection because the plane flew for 75 hours after the FAA inspection. Defendant's Reply (Ct. Rec. 23) at 6.  In addition, Thomas Bollinger had inspected the plane for airworthiness subsequent to the FAA inspection.  Ct. Rec. 4 at footnote 5 on page 11.
///

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 4

**II. LEGAL AND REGULATORY BACKGROUND**

**A. Discretionary Function Exception**

The Federal Tort Claims Act grants federal courts jurisdiction over damages claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b) (Supp. IV 1998). Under the FTCA, the government may be held liable for negligence "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

The Government has not waived its immunity under the FTCA, however, for claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. 28 U.S.C. § 2680(a).; *See also GATX/Airlog Co. v. U.S.* 286 F.3d 1162, 1173 (2002).

In *Berkovitz v. United States*, 486 U.S. 531, 536 (1988), the Supreme Court laid out the now familiar two-part test that governs application of the discretionary function exception: (1) the challenged conduct must be discretionary-that is, it must involve an element of judgment or choice; and (2) "that judgment [must be] of the kind that the discretionary function exception was designed to shield**."** The government bears the burden of proving both of these prongs. *Id.*

The second step of the two-part test focuses not on the employees' intent in exercising discretion, but on the nature of

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 5

the actions taken and whether they are susceptible to policy analysis. *U.S. v. Gaubert*, 499 U.S. 315, 324 (1991). The decision "need not actually be grounded in policy considerations as long as it is by its nature susceptible to policy analysis." *GATX*, 286 F.3d at 1174. When a statute or regulation allows a federal employee to act with discretion, "it must be presumed that the agent's actions are grounded in policy when exercising that discretion." *Id* at 1174.[2]

Neither general regulations nor broad policy mandates remove discretion unless they specifically prescribe a course of conduct. *Kelly v. United States*, 241 F.3d at 760. Moreover, "issues of negligence have no bearing on the discretionary function inquiry." *In re Glacier Bay,* 71 F.3d 1447, 1451 (9th Cir. 1995).

The discretionary function exception will not shelter the government from liability where an employee violates a "specific mandatory directive." *Berkowitz v. United States*, 486 U.S. 531, 544 (1998). Where a statute, regulation, or policy mandates particular conduct by a government employee, the discretionary

---

[2]It is the nature of the conduct rather than the status of the actor that governs whether the discretionary function exception applies in a given case. The exception covers "not only agencies of the government....but all employees exercising discretion." "Thus the basic inquiry concerning the application of the exception is whether the challenged acts of a Government employee –whatever his or her rank– are of the nature and quality that Congress intended to shield from tort liability." *United States v. Varig Airlines*, 467 U.S. 797, 813 (9th Cir. 1984).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 6

function exception will not apply. *Conrad v. United States,* 447 F.3d 760, 765 (9th Cir. 2006).

The discretionary function exception is firmly rooted in public policy. The discretionary function exception is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *Varig*, 467 U.S. at 814. Where the exception applies, the court lacks subject matter jurisdiction. *Reed v. United States Dep't of the Interior*, 231 F.3d 501, 504 (9th Cir. 2000).

**B. Regulatory Scheme**

The FAA is mandated by federal statute to promote air safety. *See* 49 U.S.C. § 4470(1)(A). As part of promoting safety, the FAA is authorized by statute to establish safety regulations, and minimum standards for the design, construction, and maintenance and inspection of the aircraft. 49 U.S.C. § 44701 (1) and (2).

Responsibility for maintaining the airworthiness of an aircraft rests with the owner. 14 CFR § 91.403 (a) states: "The owner or operator of an aircraft is primarily responsible for maintaining the aircraft in an airworthy condition." There are no standard or published airworthiness standards for amateur-built experimental aircraft. Defendant's Motion to Dismiss Exhibit B, Declaration of William O'Brien at ¶8. Approximately 450 different makes or models of amateur-built experimental planes exist. There are roughly 20,000 such registered planes in the United States. *Id* at ¶ 6. There are approximately 500 to 600 FAA inspectors to perform airworthiness certificate inspections on the 200,000 general aviation aircraft registered in the United States. *Id.*

1   The FAA airworthiness certification process consists of a
2 "general airworthiness inspection of the aircraft."  Order 8130.2
3 D. Ct. Rec. 4, Exhibit D.
4   In the portion of the inspection that deals with the physical
5 inspection of the aircraft, the following items are to be examined
6 to determine the following:
7     a.   The aircraft identification plates are proper.
8     b.   The information on the identification plate is correct.
9     c.   The aircraft nationality and identification marks are
10         proper.
11    d.   The flight control system, engine(s), propeller(s),
12         pitot static system, and associated instruments operate
13         properly.
14    e.   The cockpit instruments are properly marked.
15    f.   The system controls (i.e. fuel selector) are properly
16         marked, placed and operational.
17    g.   An emergency locator is installed, if required. Order
18         8130.2D. Section 128C. Ct. Rec. 4, Exhibit D.
19   Initial or original airworthiness certification [before the
20 plane is flown, as was the case with the Bollinger plane] is
21 subject to certain operating limitations, including two that are
22 significant in this case:  a requirement that the aircraft be test
23 flown between 25-40 hours and then certified as safe by the test
24 pilot; and (2) to undergo an inspection every 12 months.
25 Defendant's Memorandum in Support of Motion to Dismiss.  (Ct. Rec.
26 4 at 7).
27 ///
28 ///

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 8

**III. DISCUSSION**

As Defendant argues, it appears that *United States v. Varig Airlines,* 467 U.S. 797 (1984), controls in this instance. In *Varig*, the Supreme Court held that the discretionary function exception to the Federal Torts Claim Act precluded tort actions based on the Federal Aviation Administration's alleged negligence in failing to check certain specific items in the course of certifying certain aircraft for use in commercial aviation.

The *Varig* Court noted that "the duty to ensure that an aircraft conforms to FAA safety regulations lies with the manufacturer . . . while the FAA retains the responsibility for policing compliance." *Id*. at 816. Recognizing that only a "relatively small number of engineers" is available to evaluate data submitted by applicants for compliance with air safety regulations, the Court concluded that the FAA's decision to use a spot-check system was an exercise of discretion based on policy considerations. *Id* at 818.

The *Varig* Court continued:

> When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. Here, the FAA has determined that a program of "spot-checking" manufacturers' compliance with minimum safety standards best accommodates the goals of air transportation safety and the reality of finite agency resources. *Id*. at 819-20.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 9

In *Varig,* both the decision to use a "spot-check" system and decisions not to check certain items during inspections were protected by the discretionary function exception.

In an attempt to distinguish their case from that in *Varig*, Plaintiffs point out that case involved a commercial aircraft instead of a private experimental plane.  However, in light of the well reasoned *Varig* opinion, Plaintiffs' attempt to distinguish *Varig* fails.  In *Varig*, the Court noted that it was the manufacturer's responsibility to inspect.  Similarly, in the arena of private aircraft, it is the owner's responsibility to maintain airworthiness.  CFR § 91.403 (a).  Plaintiffs then attempt to cite to FAA advisory circulars (internal manuals), to show that the FAA inspector had a duty that he failed to perform. Plaintiff's Response to Motion to Dismiss.  (Ct. Rec. 21 at 7).  However, as the government points out in its reply, those circulars do not have the force of law or regulation.  Nor do they mandate a specific course of conduct/action.  Government's Reply at 5.  FAA Order 8130.2d, Chapter 2 supports the Defendant's position.

In the case at bar, the parties agree that FAA Order 8130.2d, Chapter 2, defines the duties imposed upon an FAA inspector whose examining an experimental aircraft for purposes of certification. More specifically, the language in question is as follows:

> "Aircraft inspection.  The FAA shall arrange with the applicant to make the aircraft available for inspection to determine that: . . .
>
>     (D) The flight control system, engine(s), propeller(s), pitot static system, and associated instruments operate properly."

Plaintiffs' counsel could not point to any other regulation which outlines the duties of the inspector for purposes of

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 10

reviewing engine and related systems.  The undisputed facts in the record show that the engine was examined in some detail. According to Plaintiff Thomas Bollinger, Mr. Vittetoe spent approximately 2 hours reviewing documents and physically examining the plane.  Thomas Bollinger's Declaration (Ct. Rec. 22) at ¶11-15.  As Defendant argues, the discretionary function applies because the Plaintiffs point to no statute, regulation or policy supporting a mandatory course of government action.  *See Kelly v. United States,* 241 F.3d 755, 760 (9th Cir. 2001).  The record shows that the inspector complied with FAA Order 8130.2d, Chapter 2 when conducting the inspection.  In addition, it appears that the purge valve was in place and functioning for the purposes of engine function at the time of the inspection.

Plaintiffs further argue that no reasonable inspector would have reviewed the engine system and not identified the absence of a small lock wire, which fits in a screw approximately 1/4 to 3/8 inches in diameter.  Complaint at ¶10; *See also* Ct. Rec. 21 at 19. However, there is no evidence of negligence in the record before the Court given the large number of experimental plane kits, (approximately 450), and the number of modifications that owners often make to these planes.  There are no standard or published airworthiness standards for amateur-built experimental aircraft. Defendant's Memorandum in Support of Motion to Dismiss, Exhibit B, Declaration of William O'Brien at ¶8.  In fact, as Mr. O'Brien explained in his declaration, "no two experimental aircraft are the same."  *Id*.

Even if, arguendo, the FAA inspector were negligent, by the very nature of the discretionary function exception, "issues of

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 11

1  negligence have no bearing on the discretionary function inquiry."
2  *In re Glacier Bay,* 71 F.3d 1447, 1451 (9th Cir. 1995).

### IV. CONCLUSION

For the reasons explained above, **IT IS HEREBY ORDERED:**

Defendant's Motion to Dismiss Plaintiffs' Claims (**Ct. Rec. 3**) is **GRANTED.**  Plaintiff's claims are hereby dismissed.

**IT IS SO ORDERED.**  The Clerk is hereby directed to file this Order, ENTER JUDGMENT in favor of Defendant, and furnish copies to counsel.

**DATED** this 20th day of November, 2006.

*s/Lonny R. Suko*

LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 12